Filed 7/11/25  In re Sebastian D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re SEBASTIAN D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085687 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J296016, J296037, J298804, J296154) |
| v. | OPINION |
| E.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant, E.M.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant, J.D.

1

Tom Bunton, County Counsel and Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

J.D. (Father) and E.M. (Mother) appeal from the juvenile court's orders terminating their parental rights to four of their minor children. They argue that the court and San Bernardino County Children and Family Services (CFS) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law by failing to inquire of certain paternal relatives about possible Indian ancestry.[1] We affirm.

## BACKGROUND

This appeal involves four of the parents' minor children: Christian D. (male, born in October 2023), N.D. (male, born in November 2022), Esteban D. (male, born in December 2021), and Sebastian D. (male, born in January 2021) (collectively, the children).

The family came to the attention of the Los Angeles County Department of Children and Family Services (the Los Angeles agency or the agency) in November 2022 when newborn N.D. and Mother tested positive for amphetamines at N.D.'s birth. A social worker met with both parents at the hospital, and they denied that Mother used drugs.

---

[1] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

The social worker told the parents that she had concerns about N.D.'s safety and asked them about possible placement options. Father suggested paternal grandmother Maria D. and his half sister Jessica C. A social worker interviewed both of the recommended paternal relatives, and both were willing to care for N.D.

The following day, Mother left the hospital without authorization while N.D. was in the neonatal intensive care unit. Father accompanied Mother, and neither parent returned to the hospital. The Los Angeles agency took N.D. into protective custody and filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1), with allegations against both parents. (Unlabeled statutory references are to the Welfare and Institutions Code.)

The court held a detention hearing in late November 2022, at which neither parent was present, and detained N.D. from both parents. He was placed with Jessica when he was almost one month old.

In early December 2022, Mother contacted the Los Angeles agency for the first time since leaving the hospital. A social worker then interviewed both parents, who agreed to participate in the proceedings. Both parents denied having any Indian ancestry. The paternal grandmother, Jessica, and a maternal aunt also all denied having any Indian ancestry.

Father said that he was born in Mexico and raised by his maternal grandparents (the children's paternal great-grandparents) in Sinaloa, Mexico until he was 12 years old, when he moved to the United States to live with his mother. The paternal grandmother

3

was born in Sinaloa, Mexico in the 1960s. She reported that her mother (the paternal great-grandmother) still lived there and that her father (the paternal great-grandfather) was dead. Father never met his father (the children's paternal grandfather), but Father "was told" that the paternal grandfather lived in Mexico. Father has two half siblings, Jessica and Viktor C., with whom he shares the same mother.[2] Viktor lived with the paternal grandmother when N.D. was born, and the paternal grandmother worked with Viktor. In addition to the children whom Father shares with Mother, Father has an adult son named Eduardo D., who is the children's half brother.

The day after the social worker spoke with both parents, the Los Angeles agency executed a warrant to take another child of the parents into custody. The agency had learned that both parents were living at the maternal grandparents' house in San Bernardino, California. The maternal grandmother and a maternal aunt were inside the residence when the warrant was executed. After executing the warrant, a social worker asked several maternal relatives if they had Indian ancestry, and they all denied that they did.

The Los Angeles County juvenile court held an arraignment hearing in early January 2023 on the petition involving N.D., at which both parents appeared, were appointed counsel, and denied the allegations. At the hearing, both parents denied that

---

[2]     On appeal, both parents mistakenly identify Evangelina Z. and Andy G. as paternal relatives who were asked about Indian ancestry. But Evangelina and Andy are the relatives of Kevin Z., the father of one of Mother's other children. The inquiry concerning the possible Indian ancestry of Kevin's relatives is not relevant to this appeal.

they had any Indian ancestry. They also filed Judicial Council ICWA-020 forms indicating the same. The court found that ICWA did not apply.

At N.D.'s jurisdiction hearing in February 2023, the Los Angeles County juvenile court found the allegations of the petition true and adjudged N.D. a dependent of the court. The court continued the disposition hearing pending a motion to transfer the matter to the San Bernardino County juvenile court, which the court subsequently granted.

The Los Angeles agency discovered that the parents had other children whom they had not previously disclosed, including Esteban and Sebastian. After the Los Angeles County juvenile court sustained the allegations against both parents as to N.D., CFS filed petitions in San Bernardino County as to Esteban and Sebastian that contained allegations against both parents under subdivisions (b)(1) and (j) of section 300. In separate hearings in February 2023, the juvenile court ordered both Sebastian and Esteban detained from the parents. During one of those hearings, Mother again stated that she did not have any Indian ancestry, and she filed another Judicial Council ICWA-020 form and a CFS Family Find and ICWA Inquiry form indicating the same.

The San Bernardino County juvenile court accepted the transfer of N.D. from Los Angeles County in March 2023. The court subsequently held a jurisdiction and disposition hearing as to Esteban and Sebastian, along with the continued disposition hearing for N.D. The court found true modified allegations as to Esteban and Sebastian,

5

adjudged them dependents, ordered Esteban, Sebastian, and N.D. removed from both parents' custody, and ordered reunification services for the parents.

At the jurisdiction and disposition hearing, the maternal grandmother, Mother, and Father all denied Indian ancestry. In the report that CFS prepared for the hearing concerning Sebastian and Esteban, CFS described all of the relatives that had been asked about possible Indian ancestry from December 2022 through March 2023, including several maternal relatives and Father's half sister Jessica. Everyone reported that they did not have any Indian ancestry. The court found that ICWA did not apply "'at this time.'"

Mother gave birth to Christian in October 2023. CFS took Christian into protective custody and placed him with a caregiver. CFS also filed a petition as to Christian that contained allegations against both parents under subdivisions (b)(1) and (j) of section 300. The court held a detention hearing that month and detained Christian. Both parents again denied to CFS and the court that they had any Indian ancestry, and Father indicated the same on CFS Family Find and ICWA Inquiry and Judicial Council ICWA-020 forms. At an initial jurisdiction and disposition hearing held for Christian in November 2023, the paternal grandmother again denied any Indian ancestry. The hearing was continued.

In March 2024, the court held a contested 12-month review hearing regarding N.D., Esteban, and Sebastian, and a contested jurisdiction and disposition hearing as to Christian. The court terminated the parents' reunification services for N.D., Esteban, and

6

Sebastian. As to Christian, the court sustained modified allegations, declared him a dependent, and bypassed reunification services under subdivision (b)(10) of section 361.5. The court set the entire matter for a section 366.26 hearing.

At the section 366.26 hearing in March 2025, the court found that the children were likely to be adopted and terminated parental rights. The court found that the ICWA inquiry had been completed and that ICWA did not apply.

## DISCUSSION

The parents argue that the court prejudicially erred by failing to ensure that CFS conducted an adequate ICWA inquiry, because CFS failed to ask certain paternal relatives about potential Indian ancestry. The argument lacks merit.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18.)

7

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the child's family members, including extended family members, upon first contact with those individuals. (*Ibid.*) In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (§ 224.1, subd. (c)(1); 25 U.S.C. § 1903(2).)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or

"other interested person[]," if the party or other interested person was not present at the first hearing.  (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry.  [Citation.]  '[R]eason to believe' exists whenever the court or [the child welfare department] has 'information suggesting that either the parent of the child or the child is a member [or citizen], or may be eligible for membership [or citizenship], in an Indian tribe.'"  (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child."  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.)  The "court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review."  (*Id.* at p. 1141.)  "'"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'"  [Citations.]  [¶]  If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did

9

not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal [of an order terminating parental rights] is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid.*)

In finding that CFS completed its ICWA inquiry and that ICWA did not apply, the trial court implicitly found that CFS conducted an adequate and proper ICWA inquiry. The parents argue that CFS failed to discharge its duty of initial inquiry under section 224.2, subdivision (b), because the agency did not inquire of the paternal great-grandparents, Father's half brother Viktor, and the children's adult paternal half brother about possible Indian ancestry. We conclude that the juvenile court did not abuse its discretion by finding the inquiry adequate and proper.

The paternal great-grandfather is deceased, so CFS could not question him. In addition, there was no error with respect to the paternal great-grandmother, because a great-grandparent does not qualify as an extended family member under the statutory definition. (§ 224.1, subd. (c)(1); see *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [no duty to inquire of great-grandparents because they were not extended family members under ICWA].) Likewise, Father's half brother and the children's half brother do not appear to qualify as extended family members under the statutory definition, so CFS did not err by not inquiring of them. (§ 224.1, subd. (c)(1).)

Moreover, assuming for the sake of argument that Father's half brother and the children's half brother do qualify as extended family members under the statutory

10

definition, CFS's failure to ask those relatives about possible Indian ancestry does not show that the juvenile court abused its discretion by finding that the inquiry was adequate and proper under the circumstances of this case. (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) Father never met or had any contact with the paternal grandfather, and Father's half siblings are related to him through the paternal grandmother. A fact finder could reasonably infer that Father's half brother and adult son would not have any information about possible Indian ancestry derived from the paternal grandfather. There was no indication from the paternal relatives questioned that there was any possible Indian ancestry derived from the paternal grandmother, who was born in Mexico, whose parents raised Father there, and whose one living parent still lived there. The paternal grandmother herself repeatedly denied any such ancestry, and so too did two of her three children—Father and his half sister Jessica. On this record, we conclude that the juvenile court did not abuse its discretion by finding that CFS's inquiry was adequate and that ICWA did not apply.[3]

---

[3] In her reply brief, Mother argues for the first time that "the rule announced by the California Supreme Court in *Dezi C.* is inapplicable because these were *known* relatives." Citing subdivision (b)(2) of section 224.2, Father argues for the first time in his reply brief that any relatives who are not extended family members within the statutory definition should still have been questioned as "'*others who have an interest in the child*.'" Because both parents raise the arguments for the first time in their reply briefs without good cause, the arguments are forfeited. (*Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1170.) The arguments are forfeited for the additional reason that they are undeveloped. (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 728.) Father provides no explanation as to why any of the individuals in question have any interest in the children. He merely asserts that "they do." In support of her argument, Mother merely cites *Dezi C.* without any discussion of why it applies only to unknown relatives or how the purported rule applies to the present

*[footnote continued on next page]*

DISPOSITION

The orders terminating parental rights as to N.D., Sebastian, Esteban, and Christian are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

---

case.  Moreover, the argument contradicts Mother's opening brief, in which she relied on the standard articulated in *Dezi C.*  Neither parent's argument is sufficiently developed to avoid forfeiture.  (*Martine*, at p. 728.)